JOSHUA B. SMITH, Appellant, *v.* WILLIAM A. GOULD, Respondent.

*Agreement to cancel a judgment — check of a third person a consideration therefor.*

The receipt by a creditor of the checks and a note given by a third person is ٭
   an ample consideration for an agreement by the creditor to cancel the judgment
   recovered by him against his debtor, and such agreement will be enforced in a
   court of equity.

APPEAL by the plaintiff, Joshua B. Smith, from a judgment of
the Supreme Court in favor of the defendant, entered in the office of
the clerk of the county of Suffolk on the 20th day of April, 1894,
upon the decision of the court rendered after a trial before the court
without a jury at the Suffolk Circuit dismissing the plaintiff's
complaint.

*Elliott J. Smith, Fred. W. Hinrichs* and *Alfred E. Hinrichs,*
for the appellant.

*Livingston Smith,* for the respondent.

BROWN, P. J. :

This was an equity action to obtain a decree directing defendant
to cancel a judgment recovered by him against the plaintiff, upon
the ground that it had been paid and settled.

The learned trial judge dismissed the complaint, placing his
decision upon the ground that the plaintiff had not successfully
borne the burden of proof, and established the facts of his claim by
a preponderance of evidence.

A careful examination of the testimony has led us to a different
conclusion, and giving due effect to the denials of the defendant,
we are of the opinion that they are entitled to very little considera-
tion in view of the undisputed facts of the case.

It appears that on December 15, 1884, the defendant recovered
a judgment against the plaintiff in the Supreme Court in Suffolk
county for the sum of $736.96, which judgment was docketed in
the clerk's office on that date.

Joshua B. Smith was insolvent, and nothing was paid or collected
on the judgment.

On April 27, 1886, Ethelbert M. Smith, a brother of Joshua B.,

with his assent and in his behalf, had, at his office in New York city, an interview with Gould in regard to the settlement of the claim, the result of which was that Ethelbert paid to Gould $250 in cash and transferred to him a promissory note made by M. R. Smith & Co., due July 23, 1886, for $150 (which note was subsequently paid), and received from Gould the following instrument:

"SMITHTOWN, *Apr.* 27, '86.

"Received of Ethelbert M. Smith four hundred dollars in full settlement of all claims against him, Joshua B. Smith or estate of Ebenezer Smith.

" $150 M. R. Smith & Co.'s note due July 23, 1886.

" 250 also of E. M. Smith.

___

" $400 WM. A. GOULD."

On May 6, 1893, one Herbert W. Smith, in behalf of the plaintiff, presented to Gould a satisfaction of said judgment and requested him to sign it. Gould declined to sign it, stating as a reason that a bill had accrued since the settlement of the judgment of about seventy dollars, and that he would not sign the satisfaction piece until he collected that bill.

The foregoing facts are either admitted or appear in the case by uncontradicted testimony.

Ethelbert M. Smith was called as a witness for the plaintiff. He gave the details of the interview, which resulted in the payment of the money and the execution and delivery of the receipt. In substance his testimony was that Gould agreed to accept $400 in settlement of the judgment, and to execute a satisfaction thereof, which the witness was to have prepared by a lawyer.

That thereafter he mailed to Gould the note and two checks, one for $50 and one for $200, both payable to Gould's order, and which were both paid, and in return received by mail from Gould the receipt above set forth.

The defendant admitted the interview in regard to the settlement of the claim and the receipt of the $400. He admitted the presentation to him by Herbert W. Smith of the satisfaction piece, and the request and refusal to execute it, and did not deny that he refused to sign it unless a bill, subsequently contracted, was paid, and he did not deny the execution of the receipt or its delivery to

Ethelbert Smith, as testified to by him. He further testified that Ethelbert told him that he would give him one-half of the claim, and that he must take that or nothing. That, at the time of the interview, he did not know he had a judgment against Joshua, and supposed he was settling a claim against Ethelbert. But he admitted on cross-examination that he had placed the claim against Joshua in the hands of his lawyers to sue, and he was unable to mention any claim he had against Ethelbert except the one upon which he had sued Joshua. And he failed to mention any other claim against Joshua except the one upon which judgment had been recovered.

He denied that he agreed to settle the judgment or execute a satisfaction piece.

Of this testimony it may be said that it is of no importance whatever whether the witness knew he had a judgment against Joshua B. Smith or not. If he did not know it, it was because he had forgotten it. He knew he had a claim, which he had directed his lawyers to sue Joshua upon and remembered its amount. The statement that he supposed he was settling a claim against Ethelbert is unworthy of belief. He could remember no claim on his examination except the one he had sued Joshua upon.

The statement that he did not settle the judgment is contradicted by the receipt. He had no claim against Joshua except the judgment, and there is no question but the receipt was his deliberate and intelligent act.

His whole testimony does not materially contradict the receipt, and that paper, read in connection with the undisputed facts, shows conclusively what the transaction was.

It was a compromise and settlement of the judgment against Joshua, and the fact that it was coupled with a verbal agreement to satisfy the judgment is corroborated by the character of the transaction and the uncontradicted evidence of Herbert W. Smith.

The point made by the respondent, that a debtor cannot discharge his debt by a payment of a sum of money less than the debt, has no relevancy to the present case.

Joshua B. Smith, the debtor, did not pay the money. He was insolvent, and his brother, who made the payment, was in no way liable to the defendant on the judgment.

The receipt of Ethelbert's checks and the note was ample consideration for the agreement to cancel the judgment, and the agreement should be enforced.   It would be manifest injustice to permit the defendant, after the receipt of the money from Ethelbert, to enforce the judgment against the plaintiff.

The judgment appealed from must be reversed and a new trial granted, with costs to abide the event.

PRATT and DYKMAN, JJ., concurred.

Judgment reversed and new trial granted, costs to abide event.